IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES W. WOMACK                                                           PLAINTIFF

v.                              Case No. 4:09-CV-04116

UNION PACIFIC RAILROAD COMPANY                                DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Union Pacific Railroad Company. (ECF No. 35). Plaintiff has filed a response (ECF No. 49) and Defendant has replied. (ECF No. 52). The Court finds the matter ripe for consideration.

## BACKGROUND

Plaintiff James Womack served as a carman[1] for Defendant, Union Pacific Railroad Company, for approximately eighteen (18) years before leaving in March 2009. On July 20, 2007, Plaintiff and another carman were performing routine inspections of two sections of railway cars bound for Shreveport, Louisiana, when Plaintiff injured his neck and back attempting to release a railcar handbrake. Defendant conducted an interview with Plaintiff after the incident, in which Plaintiff indicated that he did not request maintenance on the handbrake after it allegedly malfunctioned and that he did not think the harm was anyone's fault. Plaintiff worked light duty for approximately two weeks following his injury until taking a leave of absence in August 2007. He had surgery on his neck in February 2008 and thereafter underwent a work hardening program before returning to unrestricted work activity in June 2008. He

---

[1] The Railroad Dictionary defines "carman" as one who "inspects and repairs railway cars." http://www.transportation-dictionary.org/Railroad-Dictionary/Carman (last visited January

worked until March 2009, had back surgery in April 2009, and has not since returned to work.

On October 27, 2009, Plaintiff filed a complaint against Defendant under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*, alleging that Defendant was both negligent in failing to provide a safe work environment and strictly liable for violating the Federal Safety Appliance Act ("SAA"), 49 U.S.C. § 20301 *et seq*., by failing to provide safe and properly functioning handbrakes.[2] Plaintiff contends that Defendant's acts caused, inter alia, cervical and lumbar spine injuries, medical expenses, lost wages, and extreme pain and mental anguish. He prays for judgment in his favor in the form of damages and costs.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-*

---

26, 2012).
  [2] Plaintiff's complaint also included a third count alleging repetitive trauma injuries under FELA. On December 1, 2010, the Court granted Plaintiff's motion to voluntarily dismiss that claim.

*Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256.

DISCUSSION

In its motion for summary judgment, filed June 22, 2011, Defendant argues that Plaintiff has (1) failed to establish as a matter of law whether the handbrake's accompanying railcar was "in use" at the time of injury, pursuant to the SAA; and (2) failed to establish a triable dispute under FELA as to whether Defendant could have reasonably foreseen that the particular handbrake would cause harm. For the following reasons, the Court grants Defendant's motion as to Plaintiff's SAA claim but denies its motion as to Plaintiff's negligence claim under FELA.

*SAA claim*

FELA provides railroad employees with a cause of action against their employer for injuries attributable to the employer's violation of the SAA. *Crane v. Cedar Rapids& I.C. Ry.*

3

*Co.*, 395 U.S. 164, 166 (1969). In claims invoking the SAA, a plaintiff must show only a statutory violation; the need to prove negligence is not required. *Id.* The SAA prohibits railroad carriers from using vehicles on its railroad lines unless such vehicles are equipped with, among other things, "efficient hand brakes[.]" 49 U.S.C. § 20302(a)(1)(B). Even if a deficiency in the handbrakes exists, however, a plaintiff may not recover under the SAA unless he can show the vehicle was "in use" at the time of injury. *Id.* at (a); *see, e.g., Wright v. Arkansas & Missouri R.R. Co.*, 574 F.3d 612, 620 (8th Cir. 2009). Whether the vehicle was in use is based on the totality of circumstances at the time of injury. *Wright*, 574 F.3d at 621. The district court determines if the vehicle was in use as a matter of law. *Id.* at 620.

   Here, the record reflects that the railway car was not in use at the time Plaintiff attempted to release the handbrake. In deposition testimony, Plaintiff indicated that on the night of his injury, he and another carman were conducting a predeparture inspection of two lines of cars before the train was assembled and sent to Shreveport. Plaintiff testified that the inspection process was a nightly occurrence and involved looking over each car "to see . . . anything that's major" and to couple air hoses and release handbrakes. (ECF No. 37, Exh. 1 at 5). He further testified that the section of cars had been "blue-flagged" at the time of injury with the track switches locked on the north and south ends. Blue flagging is a procedure whereby the carman or other railroad worker places a flashing blue light in the lead locomotive cab and a blue flag on the track. The purpose is to alert others that the cars should remain stationary because they are under inspection or maintenance. Plaintiff noted that it is not until after the carmen complete their predeparture inspection routine—coupling hoses, testing the air brakes, and ensuring that the handbrakes release—that the blue flags are removed. The train is thereafter handed over to the train crew, who go about moving the cars. In this instance, Plaintiff had not completed the

4

inspection process when his injury occurred. Plaintiff and another carman still had cars left that required the coupling of air hoses and the release of handbrakes. The cars remained in a blue flag status and the train had yet to be fully assembled.

Based on the totality of circumstances at the time of Plaintiff's injury—namely, that the cars were blue-flagged, immobile, and still under inspection—the Court finds that the train was not in use as a matter of law. *See Wright*, 574 F.3d at 622 (noting that blue flagging is "widely recognized throughout the railroad industry as a signal, warning crews not to move locomotives in the surrounding area[]"). Accordingly, the SAA does not apply and Defendant cannot be held strictly liable. Defendant's motion for summary judgment as to Plaintiff's strict liability claim is granted.

*FELA claim*

Defendant further contends that summary judgment should be granted in its favor as to Plaintiff's FELA claim. Specifically, Defendant asserts that no factual dispute exists as to whether it could have reasonably foreseen that the handbrake would cause harm. In response, Plaintiff provides deposition testimony of retained expert John David Engle, who concluded that the defect in the handbrake, by its nature, should have been discovered well before Plaintiff's injury. Viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has established a question of fact as to whether Defendant possessed actual or constructive notice of the handbrake defect before it allegedly caused harm.

To recover under FELA, an employee must show that his employer "breached its duty to provide him with a reasonably safe workplace." *Martinez v. Union Pacific R. Co.*, 82 F.3d 223, 228 (8th Cir. 1996). Whether an employer breached its duty is measured by "the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by

what these same persons would anticipate as resulting from a particular condition." *Ackley v. Chicago & N.W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987). The employer's duty to provide a safe workplace turns on whether the employee's injury was reasonably foreseeable. *See Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992) ("[T]he employer's duty under FELA to maintain a safe workplace turns in a general sense on the reasonable foreseeability of harm.") (citing *Ackley*, 820 F.2d at 267). In establishing foreseeability, the employee must show that his employer possessed actual or constructive notice of the unsafe condition. *See, e.g., Szekeres v. CSX Transportation, Inc.* 617 F.3d 424, 430-31 (6th Cir. 2010) ("[N]otice under . . . FELA may be shown from facts permitting a jury to infer that the defect could have been discovered by the exercise of reasonable care or inspection[.]"); *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 742 (7th Cir. 2005) (finding that a plaintiff must show actual or constructive notice by employer before recovering under FELA); *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993) ("[T]he essential element of reasonable foreseeability in FELA actions. . . requires proof of actual or constructive notice to the employer of the defective condition that caused the injury.").

Wayne Hunter, the Car Foreman who inspected the handbrake following the incident, indicated in deposition testimony that maintenance reports showed that the handbrake's brake shoe was changed on June 25, 2007, less than a month before the July 20, 2007 incident. Hunter indicated that if he had been the one replacing the brake shoe, he would have applied and released the handbrake so as to discern whether the device was functioning properly:

> Q. . . .you would have figured that out when you were changing the brake shoe, right?
>
> A. After I changed the brake shoe, I would have seen if there was something wrong with hand brake.

(ECF No. 49, Exh. 16 at 10).

In a deposition dated November 10, 2011, Plaintiff's expert John David Engle observed photographs and exhibits of the handbrake and indicated that the device displayed "telltale" signs that should have alerted Defendant that a thorough inspection was needed. (ECF No. 49, Exh. 19 at 12). Engle noted that Defendant "bad ordered" the car on May 27, 2007, less than two months before Plaintiff's injury. According to Engle, a bad ordered car was required to be "inspected from one end to the other for any AAR or FRA defects." *Id.* at 13. He noted that Defendant should have identified the handbrake as defective at that time:

> Q.   Okay. Number 2 says Union Pacific should have discovered that the handbrake was not efficient before July of 2007 and removed it from service. Do you see that?
>
> A.   Yes, sir.
>
> Q.   How would Union Pacific have discovered that?
>
> A.   As recently as May of 2007 before this incident happened when the car was bad ordered, this defect because of all the telltale signs should have been found and corrected.

(ECF No. 49, Exh. 19 at 18). Engle further indicated that when a brake shoe is replaced, as was done with this car on June 25, 2007, railroad custom and practice required the handbrake to be inspected and tested. While Engle admitted he did not know whether Defendant tested the handbrake during the June 2007 brake shoe replacement, he opined that because of nature of the handbrake's defect, someone should have discovered the problem at that time:

> Q.   If someone did apply and release the handbrake [when the brake shoe was replaced on June 25, 2007], could it have been working properly?
>
> A.   In my opinion, no.
>
> Q.   Why is that?

>    A.   Because all of these other things didn't happen to this car from June to July and go unnoticed.

(ECF No. 49, Exh. 19 at 22).

In response, Defendant states that Engle's opinion should be excluded as speculative. The Court disagrees. Rule 56(c)(4) requires that affidavits and declarations attached in support of or in opposition to a summary judgment motion must be admissible in evidence before the district court can properly consider them. Fed. R. Civ. P. 56(c)(4); *see, e.g., DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 825-6 (8th Cir. 2009) (district court has broad authority in controlling supplementation of summary judgment record). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), the Court is to perform a "gatekeeping" function and insure that proffered expert testimony is both relevant and reliable. *See Penney v. Praxair, Inc.*, 116 F.3d 330, 333 (8th Cir. 1997). This gatekeeping function applies to all expert testimony, not just testimony based in science. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Engle's opinions draw from his experience in the railroad industry. He has "[m]ore than 16 years of extensive railroad mechanical and management knowledge." (ECF No. 49, Exh. 5 at 1). He possesses training as a welder, switchman, locomotive engineer, and conductor. He has

presented programs and seminars related to railroad safety, and he is a member of the Air Brake Committee of the Association of American Railroads. Engle has served as a student mechanic carman, a railroad technical instructor, and an air brake superintendent. He has also provided consulting services for the railroad and welding industries.

Engle's deposition testimony indicates that his opinions are based on provided exhibits that depict the handbrake. The Court finds that these exhibits provided Engle with a sound foundation upon which he could then utilize his technical experience in formulating an opinion about the handbrake. Defendant possessed the opportunity to cross-examine Engle at the deposition as to his background and opinions and has provided no factual support for its assertion that Engle's conclusions should not be considered. For purposes of the summary judgment record, the Court accepts Engle's deposition testimony.

Viewed in a light most favorable to Plaintiff, the Court finds that a question of fact remains as to whether Defendant possessed actual or constructive notice of the allegedly defective handbrake before the July 20, 2007 incident. Engle opined that this type of defect would not have arisen between the time the brake shoe was replaced and when the incident occurred. Hunter testified that if he were the one replacing the brake shoe, he also would have tested the handbrake as per custom—but the question remains as to whether the person who actually replaced the brake shoe on this particular car also examined and tested the handbrake. While Plaintiff has not produced definitive evidence showing that the handbrake was defective before the incident, he has produced testimony raising factual questions as to whether Defendant knew or should have known that the handbrake was malfunctioning and in need of attention when it replaced the brake shoe—or when it originally bad ordered the car in May 2007. That issue, in the Court's view, is better resolved by a jury. Accordingly, Defendant's motion for

summary judgment as to Plaintiff's second claim is denied.

## CONCLUSION

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 35) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, on this 26th day of March, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge